UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x

UNITED STATES OF AMERICA                    :

        v.                                              :

HIPOLITO THOMAS                             :

             Defendant,                        :

------------------------------------------------x

          23 CR 162 (JLR)

## SENTENCING MEMORANDUM

**LOUIS M. FREEMAN**
Attorney for Hipolito Thomas
Freeman, Nooter & Ginsberg
75 Maiden Lane, Suite 907
New York, NY 10038
(212) 608-0808

**INTRODUCTION**

Hipolito Thomas is scheduled to be sentenced by Your Honor on May 14, 2024.  He submits, through counsel, the following memorandum to assist the Court in imposing a sentence that is "sufficient, but not greater than necessary" in accordance with the mandate set forth in 18 U.S.C. § 3553(a).  As the following paragraphs will conclusively demonstrate, under the facts and circumstances of this case, including Mr. Thomas' personal history and characteristics, as well as his acceptance of responsibility, that the amalgam of strong mitigating factors present here compel a thirty-seven month sentence.

**BACKGROUND**

On March 4, 2023, Mr. Thomas was arrested by the NYPD.  He was taken into federal custody on April 21, 2023, where he remains.  An indictment was filed in the Southern District of New York on March 28, 2023 charging Mr. Thomas with one count of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §922(g)(1) and 2.

According to the Pre-Sentence Investigation Report ("PSR"), Mr. Thomas' Guidelines Range is calculated as follows:

1. The applicable Guideline for Count 1 is U.S.S.G. §2K2.1;

2. Pursuant to U.S.S.G. §2K2.1(a)(4)(A), the base offense level is 20 because the defendant committed the offense after sustaining a felony conviction for a crime of violence or a controlled substance offense;

3. Pursuant to U.S.S.G. §2K2.1(b)(4)(A), the offense level is increased by two levels because the firearm was stolen;

4. Pursuant to U.S.S.G. §2K2.1(b)(6)(B), the offense level is increased by four levels because the defendant used and possessed the firearm and ammunition in connection

with another felony offense.  Specifically, the defendant used the firearm to attempt to extort a deli cashier on March 4, 2023 and

5. Pursuant to U.S.S.G. §3E1.1(a) and (b), assuming the defendant, in a timely manner, clearly demonstrates acceptance of responsibility to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence, a three-level reduction will be warranted.

6. The applicable offense level is 23.

7. Mr. Thomas' criminal history score is six.  While he committed the instant offense while under a criminal justice sentence, pursuant to U.S.S.G. §4A1.1(e) because his total criminal history points are less than seven, no additional points are added.

8. A criminal history score of six places Mr. Thomas in CHC III, which results in a guideline range of 57 to 71 months' imprisonment.

## RECOMMENDATION OF THE PROBATION DEPARTMENT

The Probation Department recommends a sentence of 57 months' imprisonment, the bottom of the Guideline range; this recommendation is based on balancing Mr. Thomas' mitigating factors against his criminal history.  Specifically, the mitigating factors present here are "the defendant's learning disability, his lack of education, and his alcohol use history." PSR, pg. 26.

## OBJECTION TO THE PSR

Defendant objects to the application of U.S.S.G. §2K2.1(b)(6)(B) in Hipolito Thomas' guideline calculation.  The Government asserts that [p]ursuant to U.S.S.G. §2K2.1(b)(6)(B), the offense level is increased by four levels because the defendant used and possessed the firearm and ammunition in connection with another felony offense. Specifically, the Government argues

that the defendant used the firearm to attempt to extort a deli cashier on March 4, 2023.  <u>Pre-Sentence Report ("PSR")</u>, ¶4(e) (citing the Government's guideline calculation pursuant to <u>United States v. Pimentel</u>, 932 F.2d 1029, 1034 (2d Cir. 1991)).

"Another felony offense" for §2K2.1(b)(6)(B) purposes is defined as "any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained."  U.S.S.G. §2K2.1, Commentary, Application Note 14(c).

Defendant assumes that the Government is alleging that Mr. Thomas attempted to extort the deli cashier, as defined by 18 U.S.C. §1951, which provides in pertinent part: "[t]he term 'extortion' means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."  18 U.S.C. §1951(b)(2).

The offense conduct (relevant here) is as follows:

> On March 4, 2023, at approximately 1:47 a.m., HIPOLITO THOMAS displayed a firearm at a Manhattan deli (the "Deli") because he was unhappy with the price of two sandwiches.  After he paid for his sandwiches, THOMAS left the deli and entered the subway station on the corner.  Specifically, the investigation revealed that THOMAS made threats to the Deli cashier (the "Victim") that the price "is too high for me so the next time if you charge me that, Ima fucking kill you with this."  After which THOMAS revealed the firearm which was on the right side of his waistband.

PSR, ¶6(a).  For the reasons that follow, this offense conduct does not meet the federal definition of extortion or attempted extortion.[1]  Although the offense conduct arguably involved the

---

[1] If the Government is asserting that Mr. Thomas violated the New York state crime of Grand Larceny by Extortion as opposed to the federal crime of extortion under 18 U.S.C. §1951, the application of the adjustment similarly fails.  As is relevant here, New York Penal Law §155.05(e) provides that "A person obtains property by extortion when he compels or induces another person to deliver such property to himself or to a third person by means of instilling in

"wrongful use of …threatened force, violence, or fear" directed at the victim, there was no

attempt to obtain property, which is a necessary component of obtaining property by extortion.

> The definition of 'property' under the Hobbs Act is admittedly expansive. . . .
> 'Property' under the Act 'includes, in a broad sense, any valuable right considered
> as a source or element of wealth,' including 'a right to solicit business.' *United
> States v. Tropiano*, 418 F.2d 1069 [at] 1075-76 . . . ; *see also Northeast Women's
> Center, Inc. v. McMonagle*, 868 F.2d 1342, 1350 (3d Cir.), ('Rights involving the
> conduct of business are property rights.'), *cert. denied*, [493 U.S. 901] (1989).
> *Town of West Hartford v. Operation Rescue*, 915 F.2d at 101.

> In accordance with these principles, the district court instructed the jury, without
> objection, that 'the term 'property' as used in these instructions means money or
> anything of value.  The term 'property' is not limited to tangible, physical items
> and includes the right to conduct a business free from wrongful force, coercion or
> fear.' (Tr. 945-46).

United States v. Arena, 180 F.3d 380, 392 (2d Cir. 1999).  Here, Mr. Thomas' conduct towards

the deli cashier simply was not an attempt to obtain property, as "property" is defined by the

Second Circuit. According to the NYPD Complaint regarding this incident, Mr. Thomas

complained about the price of the sandwiches and told the cashier that this was the last time he

would be charged $14 for two sandwiches:

---

**NARRATIVE:**
AT T/P/O C/V STATES PERP DID HAVE A DISPUTE OVER THE PRICE OF FOOD THAT WAS ORDERED. AFTER PERP DID PAY FOR HIS FOOD, HE STATED TO C/V ?WHY MOTHERFUCKER ISIT $14, THIS IS THE LAST TIME YOU GONNA CHARGE ME THIS, YOU SEE WHAT I HAVE?? AT WHICH TIME PERP DID LIFT HIS RIGHT SIDE OF JACKET BRANDISHING A BLACK FIREARMPLACING C/V IN FEAR OF HIS SAFETY  PERP THEN FLED INTO THE 6 LINE TRAIN STATIONLOCATED ON THE S/E CORNER. C/V CALLED 911 AND PROVIDED A DESCRIPTION OF PERP.UPON ARRIVAL A/O CONDUCTED A CANVASS WITH C/V ON THE N/B PLATFORM OF E110&LEXINGTON AVENUE. AT WHICH TIME C/V POINTED OUT PERP. PREP WAS THEN APPREHENDED AND FOUND TO BE IN POSSESSION OF A LOADED BLACK F&N MODEL 49 FIREARM, SERIAL# 517NN01599. SAID FIREARM IS REPORTED STOLEN OUT OF PENNSYLVANIA STATE POLICE FERN RIDGE  CAMERAS AVAILABLE INSIDE DELI & AND TRAIN STATION

Version 1. ***ADDITIONAL NOTIFICATIONS ADDED***

---

him a fear that, if the property is not so delivered, the actor or another will: (i) Cause physical
injury to some person in the future; or (ii) Cause damage to property; or (iii) Engage in other
conduct constituting a crime….  Property in this context is defined as "any money, personal
property, real property, computer data, computer program, thing in action, evidence of debt or
contract, or any article, substance or thing of value, including any gas, steam, water or electricity,
which is provided for a charge or compensation."  N.Y. Penal Law § 155.00 (Consol., Lexis
Advance through 2023 released Chapters 1-730).  For the same reasons stated infra as relates to
the federal definition of extortion, Mr. Thomas' alleged offense conduct does not constitute the
New York state crime of grand larceny by extortion.

Exhibit A, NYPD Complaint No. 2023-023-001341.

 "The Arena Court explained that 'where the property in question is the victim's right to conduct a business free from threats of violence and physical harm, a person who has committed or threatened violence or physical harm in order to induce abandonment of that right has obtained, or attempted to obtain, property within the meaning of the Hobbs Act.' *Id.* at 394." United States v. Gotti, 459 F.3d 296, 321 (2d Cir. 2006).  Here, not only did Mr. Thomas not attempt to obtain any tangible property from the cashier, he also did not attempt to interfere with the deli's right to conduct business (intangible property right).  As stated by the Second Circuit:

> Thus, we hold that in evaluating an extortion count's conformity with *Scheidler II* -- *i.e.*, whether it adequately alleges the 'obtaining of property' for purposes of the Hobbs Act's definition of extortion -- the key inquiry is whether the defendant is (1) alleged to have carried out (or, in the case of attempted extortion, attempted to carry out) the deprivation of a property right from another, with (2) the intent to exercise, sell, transfer, or take some other analogous action with respect to that right.

Id. at 324.

Taking the Government's description of the offense conduct and the NYPD's description of the offense as fact, Mr. Thomas' conduct simply does not rise to extortion even under the Second Circuit's expansive definition.  He complained about the price of the sandwiches and revealed his firearm while conveying a threat to the deli worker ("this is the last time you gonna charge me this").  However, Mr. Thomas did not obtain or attempt to obtain anything of value from the cashier or interfere with the deli's right to conduct business and for those reasons, this offense conduct does not qualify for a four-point enhancement under U.S.S.G. §2K2.1(b)(6)(B) as an "attempt to extort a deli cashier on March 4, 2023."  Accordingly, Defendant submits that his total offense level should be 19 and with a CHC of III, his Guideline range becomes 37 to 46

6

months' imprisonment.

### *BRUEN* and 18 U.S.C. 922(g)

The issue of whether 18 U.S.C. §922(g) is constitutional, after the Supreme Court's

decision in New York State Rifle & Pistol Association, Inc. v. Bruen, 597 U.S. 1 (2022), is one

that is currently being litigated in federal courts nationwide.

> Recently, federal appeals courts have held that the firearm possession prohibitions
> for three of the nine categories violate the Second Amendment: (1) in *Daniels*, the
> Fifth Circuit held that Section 922(g)(3) was unconstitutional as applied to the
> defendant; (2) in *United States v. Rahimi*, the Fifth Circuit invalidated 18 U.S.C.
> §922(g)(8), which prohibits individuals subject to certain domestic violence
> restraining orders from possessing firearms; and (3) *Range v. Attorney General*,
> the Third Circuit concluded that 18 U.S.C. § 922(g)(1), which makes it unlawful
> for felons to possess firearms, was unconstitutional as applied to a defendant
> whose past felony was a nonviolent fraud offense.

Congressional Research Service, Legal Sidebar, The Second Amendment and the Federal

Prohibition on Unlawful Drug Users from Possessing Firearms, January 12, 2024, pg. 1,

*available at* https://crsreports.congress.gov/product/pdf/LSB/LSB11104.

After the Third Circuit's en banc ruling in Range v. Attorney General, 69 F. 4th 96 (3d

Cir. 2023),

> [t]he government filed a petition for review with the Supreme Court, pointing out
> that the Third Circuit's opinion conflicted with decisions reached by the Eighth
> Circuit in *United States v. Jackson* and *United States v. Cunningham*, and another
> by the Tenth Circuit in *United States v. McCane*. Given that the Court granted
> review in *Rahimi*, the government in *Range* asked the Court to hold the petition
> pending a ruling in *Rahimi* and, following such ruling, either vacate the Third
> Circuit's decision and remand or fully review this or another case raising the
> constitutionality of Section 922(g)(1). The petition is pending.

Congressional Research Service, Legal Sidebar, Current Second Amendment Cases

Before the Supreme Court, January 18, 2024, pg. 3, *available at*

https://crsreports.congress.gov/ product/pdf/LSB/LSB11108.

As of today's date, <u>Rahimi</u> has not been decided and <u>Range</u> is pending petition. However, should the constitutionality of 18 U.S.C. §922(g)(1) be successfully challenged, Mr. Thomas has the right to bring a timely, direct appeal to assert that there was no constitutional basis for his conviction, despite his having pled guilty to the offense as such right cannot be waived.[2]  In <u>Class v. United States</u>, 583 U.S. 174 (2018), the Supreme Court posited that

> The question is whether a guilty plea by itself bars a federal criminal defendant from challenging the constitutionality of the statute of conviction on direct appeal. We hold that it does not.  Class did not relinquish his right to appeal the District Court's constitutional determinations simply by pleading guilty. As we shall explain, this holding flows directly from this Court's prior decisions.

<u>Class</u>, 583 U.S. at 178.

> Finally, a valid guilty plea relinquishes any claim that would contradict the 'admissions necessarily made upon entry of a voluntary plea of guilty.' <u>Broce</u>, <u>supra</u>, at 573-574, 109 S. Ct. 757, 102 L. Ed. 2d 927. But the constitutional claim at issue here is consistent with Class' admission that he engaged in the conduct alleged in the indictment. Unlike the defendants in <u>Broce</u>, Class' challenge does not in any way deny that he engaged in the conduct to which he admitted. Instead, like the defendants in <u>Blackledge</u> and <u>Menna</u>, he seeks to raise a claim which, "judged on its face" based upon the existing record, would extinguish the government's power to "constitutionally prosecute" the defendant if the claim were successful. <u>Broce</u>, <u>supra</u>, at 575, 109 S. Ct. 757, 102 L. Ed. 2d 927 (quoting <u>Menna</u>, 423 U. S., at 63, n. 2, 96 S. Ct. 241, 46 L. Ed. 2d 195).

<u>Id</u>. at 183.

As in <u>Class</u>, any constitutional claim made by Mr. Thomas would be directed towards 18 U.S.C. §922(g)(1)(either facially or as applied to his case) and would not be inconsistent with the fact that he has a prior felony or was in possession of a firearm on March 4, 2023 (the relevant offense conduct).

---

[2] Defendant raises this issue for preservation purposes only in lieu of making a motion to dismiss pursuant to Federal Rule of Criminal Procedure 12(b) subsequent to the acceptance of his guilty plea.  Accordingly, Mr. Thomas is not requesting the court rule on this issue.

## PERSONAL HISTORY AND CHARACTERISTICS[3]

Hipolito Thomas was born on December 20, 1982 in Bronx, New York to Diana Thomas and Hipolito Rivera, age 56.  Mr. Thomas' father lives in the Bronx, is retired from construction work and is currently sick with an ailment he will not disclose to any of his family members.

Mr. Thomas has three siblings: his sister Mary Thomas, age 35, who lives in Manhattan with her partner and three children and works for a childcare facility; his brother, Darnell Thomas, age 31 and Oswell Thomas, age 30.  Darnell and Oswell live together at their mother's former residence in Manhattan.  Darnell works for a hotel and Oswell is unemployed.  Mr. Thomas also has three maternal half-siblings: Steve Thomas, age 28, who works for a hospital in Brooklyn; Stephan Thomas, age 24, who is enrolled in college and was the victim of a drive by shooting in 2021; and Stepshawn Thomas, age 21, who is also enrolled in college.  Steve, Stephan and Stepshawn also reside in their mother's former apartment in Manhattan.  Mr. Thomas enjoys close relationships with all of his siblings and they remain supportive of him.

Mr. Thomas' parents separated when he was around seven years old.  His parents remained good friends and he spent time with each parent.  Shortly after their separation, Ms. Thomas met Oswell Ochao, Mr. Thomas' stepfather and father to his half-siblings.  Mr. Ochao was a retired NYPD officer who suffered from diabetes; he passed away in 2022 due to diabetic complications.  His death took an emotional toll on Mr. Thomas as they shared a very close relationship.

Although Mr. Thomas' mother struggled financially at times, his childhood was one filled with happy memories.  He recalls enjoying positive relationships with all his family members and spending much of his leisure time playing sports.  In school, he was placed in special education

---

[3] Information for this section is derived from the PSR ¶¶ 45-64 and from the Mitigation Report, attached as Exhibit A.  We have endeavored not to duplicate information contained in the mitigation report.

classes and an Individualized Education Program (IEP) was put in place for him.  Despite this intervention, he left school in the eleventh grade and continues to have trouble reading and writing.[4]

In 2002, Mr. Thomas began a relationship with Jasmine Orengo and they have three children together, Jayla Thomas, age 17, Haily Thomas, age 13 and Leah Thomas, age 10.  Ms. Orengo works at Burger King in Brooklyn as a cashier/cook and all of the children are enrolled in school and doing well.  Mr. Thomas was residing with Ms. Orenga and their children in the Bronx prior to this arrest.  Mr. Thomas also has a son with Leslie Garcia, Sean Thomas, age 17.  He lives with his mother in Manhattan.  Prior to his arrest, Mr. Thomas was providing financial support to his son when he was able.  Since his arrest, Ms. Garcia has cut off contact between Mr. Thomas and his son.

From approximately 2010 to 2020, Mr. Thomas was self-employed doing construction work, such as installing sheetrock and painting, at various locations in Manhattan and the Bronx.

## PHYSICAL CONDITION

In 2019, Mr. Thomas and Ms. Orengo were involved in a motorcycle accident where they were hit by a car.  Many of his teeth were broken and he suffered injuries to his ankle and back. He also underwent an X-ray, which revealed that he had a lump pressing on his back.  He attended physical therapy for approximately two months.

In March of 2023, shortly after his incarceration for this offense, Mr. Thomas was hospitalized and subsequently diagnosed with type II diabetes.  He was prescribed insulin but currently manages his diabetes though his diet and takes glucose tablets as needed.  He also suffers from asthma, for which he is prescribed Albuterol, an asthma inhaler.

---

[4] Mr. Thomas suffers from ADHD and other psychological conditions as interpreted in the evaluation and report of Dr. Sanford L. Drob, attached as Exhibit B.

**SUBSTANCE USE DISORDER**

Mr. Thomas first tried marijuana when he was eighteen years old and continued using marijuana twice daily for the next five years.  He discontinued use when he had children, but he resumed his daily use when he was 28 years old which continued until he was arrested in 2014.  He tested positive for marijuana use in April of 2016, while on supervised release.  This was his only positive drug test while on supervised release.

Regarding alcohol use, Mr. Thomas first starting drinking alcohol in his teens and would consume a couple of drinks on a social basis.  However, it is worth noting, Mr. Thomas committed the instant offense conduct while under the influence of alcohol.

**APPLICATION of 18 U.S.C. §3553**

18 U.S.C. §3553(a) requires the imposition of a sentence that is sufficient, but not greater than necessary.  Such a sentence shall be imposed after careful consideration of

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. §3553(a).

**MITIGATION**

In light of all of the mitigating circumstances present here, as presented in Exhibit A, a sentence of 37 months' incarceration, the bottom of the Guideline range,[5] complies with the

---

[5] Should the Court find that the four-level enhancement under U.S.S.G. §2K2.1(b)(6)(B) is applicable to Mr. Thomas, we urge the Court to consider a downward variance from fifty-seven months' to thirty-seven months' incarceration based on the mitigating factors present here and

mandate of 18 U.S.C. § 3553(a).  Specifically, a sentence of 37 months is "sufficient, but not greater than necessary."  It reflects the nature and circumstances of the offense and the mitigating factors presented by the personal history and characteristics of Mr. Thomas.  It also reflects the seriousness of the offense, promotes respect for the law and provides just punishment for the offense.

Regarding deterrence, such a sentence provides Mr. Thomas with specific deterrence to not commit any future crimes, which will be further enforced by the Court's imposition of a period of supervised release.  While it is true that Mr. Thomas has an extensive criminal history record, this offense conduct (committed only 2 months after starting supervised release) and resulting incarceration is certainly a low point- a bottom- in his life.  Although he does not qualify for a sentence reduction through RDAP, Mr. Thomas believes that substance abuse treatment would benefit him.  As noted by the Probation Department, "the defendant reported that he is interested in receiving alcohol and substance use counseling."  PSR, Sentencing Recommendation, pg. 26.  Further, "the defendant expressed remorse for his behavior during the presentence interview, and he committed to making positive changes upon his release, such as obtaining and maintaining lawful employment, making better decisions, and continuing his education."  Id. at pg. 25.  Such a sentence also provides the public with a message of general deterrence to not commit crimes of this nature.

## CONCLUSION

Because of the facts and circumstances of this case, including Mr. Thomas' personal history and characteristics as well as his acceptance of responsibility, we urge the court to

---

Mr. Thomas' desire to obtain substance abuse counseling, continue his education and obtain gainful employment, all goals which will not be better served by an extra twenty months of incarceration.

impose a fair and reasonable sentence of thirty-seven months' incarceration.

Respectfully Submitted,

/s/ Louis M. Freeman
Louis M. Freeman

Dated: April 30, 2024
New York, New York